# In the United States Court of Appeals, for the Ninth Circuit

---

YEMA KHALIF, HAWI AWASH,
Plaintiffs-Appellants,

vs.

CITY OF BELVEDERE; BELVEDERE POLICE
DEPARTMENT; JEREMY CLARK,
Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of California, Oakland Division,
No. 4:22-cv-04097 - Hon. Yvonne Gonzalez Rogers

---

## APPELLANTS' OPENING BRIEF

---

David P. Pruett (155849)
Kelly, Trotter & Franzen
dpruett@kellytrotter.com
111 W. Ocean Bl., 14th Floor
Post Office Box 22636
Long Beach, CA 90801-5636
(562) 432-5855
Fax (562) 432-8785

David C. Anderson (83146)
Anderson Law
david@dcandersonlaw.com
591 Redwood Hwy, B-4000
Mill Valley, CA 94941-3039
(415) 395-9898
Fax (415) 395-9839

Attorneys for Plaintiffs-Appellants
Yema Khalif and Hawi Awash

# Table of Contents

INTRODUCTION ................................................................ 8

JURISDICTIONAL STATEMENT .............................................. 9

STATEMENT OF ISSUES ................................................... 10

STATEMENT OF PRIMARY AUTHORITIES ............................ 11

STATEMENT OF THE CASE ................................................ 12

   **A.**    **ORDER GRANTING MOTION TO DISMISS PRESENTED FOR REVIEW BY THIS APPEAL** .................................. 12

   **B.**    **FILING OF ACTION AND FIRST AMENDED COMPLAINT** .. 13

   **C.**    **HEARING ON MOTION TO DISMISS SECOND AMENDED COMPLAINT** ........................................................... 14

       **1.**    **Allegations of Second Amended Complaint** ............... 14

       **2.**    **Hearing on Motion to Dismiss Second Amended Complaint**. 17

   **D.**    **THE THIRD AMENDED COMPLAINT** ......................... 21

       **1.**    **Custom of Harassment of Plaintiffs, Because They Are Black, Prior to the Confrontation** ............................... 24

       **2.**    **Facts Showing Intentional Discrimination, Harassment, Based on Race; Police Officers' Knowledge of Identities of Plaintiffs Prior to Confrontation** ............................... 25

       **3.**    **Officer Clark Participated in a Coordinated Confrontation in Accordance with Officers' Conspiracy** ................... 28

       **4.**    **Facts and Circumstances Supporting *Monell* Liability of City and Police Department** ................................... 32

       **5.**    **Allegations Regarding Conspiracy to Intimidate Based on Race to Interfere with Plaintiffs' Commercial Activities; Citations to 18 U.S.C. §§ 241, 242, 245** ...................... 33

       **6.**    **First Cause of Action, Fourteenth Amendment, Against Officer Clark for Denial of Equal Protection and Failure to Intervene** .......................................................... 36

       **7.**    **Second Cause of Action, Fourth Amendment, Against Officer Clark for Prolonged Detention and Failure to Intervene** .......................................................... 38

       **8.**    **Third Cause of Action, *Monell* Liability of City and Police Department for Official Policy or Custom in Violation of Civil Rights** ........................................................ 39

    E.      MOTION TO DISMISS THIRD AMENDED COMPLAINT
            AND ORDER GRANTING IT ...................................... 41

     1.    Defendants' Motion to Dismiss ...................................... 41

     2.    Plaintiffs' Opposition to Motion to Dismiss.............................. 43

        a)   Plaintiffs' Reference to 42 U.S.C. § 1985(3) as the Civil
             Liability "Analogue" to Criminal Provisions of 18
             U.S.C. §§ 241, 242, and 245 ....................................... 44

        b)   Motion Was to Be Assessed Based on Facts, Not
             Statutory Citations................................................. 45

        c)   Plaintiffs' Contested Defendants' Request for Judicial
             Notice of Police Body-Cam Video ............................ 45

        d)   Plaintiffs' Opposition Supported Claims for Violations
             of Fourteenth and Fourth Amendments (First and
             Second Causes of Action)....................................... 46

        e)   Plaintiffs' Opposition Demonstrated Adequacy of
             Pleading Against Entities Based on *Monell* ........................... 50

     3.    Belvedere's Reply to Plaintiffs' Opposition.............................. 52

     4.    District Court's Order Granting Motion to Dismiss ............... 53

SUMMARY OF ARGUMENT ......................................... 57

ARGUMENT ................................................................ 60

  I.    STANDARD OF REVIEW ON MOTION TO DISMISS IS DE
      NOVO ................................................................... 60

  II.   IT WAS ERROR TO DECLINE TO CONSIDER WHETHER
      THE FACTS ALLEGED SUPPORTED LIABILITY
      PURSUANT TO 42 U.S.C. § 1985(3) ............................ 61

    A.   Civil Rights Claims Do Not Require Citations to Statutes
       (Like §§ 1983, 1985(3) ............................................ 61

    B.   At Minimum, Leave to Amend to Cite Section 1985(3),
       Should Have Been Granted ..................................... 63

  III.  PLAINTIFFS ADEQUATELY PLED FEDERAL CAUSES
      OF ACTION........................................................... 65

    A.   Erroneously Heightened Pleading Standard Was
       Applied ................................................................ 65

    B.   Plaintiffs Adequately Alleged Facts of Conspiracy to
       Violate Plaintiffs' Civil Rights ................................. 69

     **C.**     **Plaintiffs' TAC and Opposition to the Motion Adequately Showed Violations of Fourteenth and Fourth Amendments**................................................................ 72

     **D.**     **Plaintiffs Adequately Pled Violation Of Fourteenth Amendment Right to Equal Protection Against Clark (Including Failure to Intervene)** ............................... 76

     **E.**     **Plaintiffs Adequately Pled Violation of Fourth Amendment Right To Be Free From Unreasonable Detention Against Clark (Including Failure to Intervene)** 87

     **F.**     **Plaintiffs Adequately Pled Cause of Action Against Municipalities Based on *Monell***................................ 91

**IV.**     **PLAINTIFFS SHOULD HAVE BEEN GIVEN LEAVE TO AMEND** ............................................................... 94

**CONCLUSION** ................................................................ 97

**ADDENDUM – STATEMENT OF PRIMARY AUTHORITIES**................ 99

**U.S. Const. amend. XIV** ................................................ 99

**U.S. Const. amend. IV:**................................................ 101

**42 U.S.C.A. § 1983 – Civil action for deprivation of rights:**................ 102

**42 U.S.C.A. § 1985 (3) – Depriving persons of rights or privileges:** ... 103

# Table of Authorities

Cases

*Adickes v. S. H. Kress & Co.*
   398 U.S. 144 (1970) ................... 10, 48, 49, 51, 52, 58, 74, 75

*Allen v. Iranon*
   283 F.3d 1070 (9th Cir. 2002) ............................................. 77

*Arizona Students Ass'n v. Arizona Bd. of Regents*
   824 F.3d 858 (9th Cir. 2016) ............................ 59, 77, 96, 97

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ...................................................... 68, 69

*Benavidez v. Cnty. of San Diego*
   993 F.3d 1134 (9th Cir. 2021) ........................................... 60

*Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*
   347 U.S. 483 (1954) ...................................................... 23, 84

*Cohen v. Norris*
   300 F.2d 24 (9th Cir. 1962) ....... 47, 48, 52, 58, 73, 88, 89, 91

*Eminence Cap., LLC v. Aspeon, Inc.*
   316 F.3d 1048 (9th Cir. 2003) ........................................... 96

*Herrera v. Zumiez, Inc.*
   953 F.3d 1063, fn. 6 (9th Cir. 2020) ........................ 58, 62, 94

*Horton v. City of Santa Maria*
   915 F.3d 592 (9th Cir. 2019) ........................................ 58, 93

*Ashcroft v. Iqbal*
   556 U.S. 662. ........................................................... 68, 69, 86

*Johnson v. City of Shelby, Miss.*
   574 U.S. 10 (2014) ........................... 57, 58, 61, 63, 69, 93, 96

*Karim–Panahi v. Los Angeles Police Dept.*
  839 F.2d 621 (9th Cit. 1988)...............................................67

*Khoja v. Orexigen Therapeutics, Inc.*
  899 F.3d 988 (9th Cir. 2018) ........................................45, 52

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*
  507 U.S. 163 (1993) ....................................57, 58, 61, 66, 94

*Lombard v. State of La.*
  373 U.S. 267 (1963) ........................................49, 53, 75, 94

*Lugar v. Edmondson Oil Co.*
  457 U.S. 922 (1982) ......................................................58, 66

*Monell v. Dep't of Soc. Servs.*
  436 U.S. 658 (1978) .......................................................60

*Monroe v. Pape*
  365 U.S. 167 (1961) ....................................47, 49, 73, 74, 89

*Naffe v. Frey*
  789 F.3d 1030 (9th Cir. 2015) ..........................58, 67, 68, 86

*Nashville, C. & St. L.R. Co. v. Browning*
  310 U.S. 362 (1940) ......................................................51, 93

*Patel v. City of Montclair*
  798 F.3d 895 (9th Cir. 2015) .............................................60

*Puri v. Khalsa*
  844 F.3d 1152 (9th Cir. 2017) ...........................................60

*Tsao v. Desert Palace, Inc.*
  698 F.3d 1128 (9th Cir. 2012) ...........................................68

*Ulrich v. City & County of San Francisco*
  308 F.3d 968 (9th Cir. 2002) .............................................77

*United States v. Guest*
  383 U.S. 745 (1966) ..........................................................65

*Weiss v. Willow Tree Civic Ass'n*
   467 F. Supp. 803, fn. 31 (S.D.N.Y. 1979) ............................65

*West v. Atkins*
   487 U.S. 42 (1988) ........................................................68

*Wolf v. People of State of Colorado*
   338 U.S. 25 (1949) ................................................48, 73, 89

*Yoshikawa v. Seguirant*
   74 F.4th 1042 (9th Cir. 2023) .......................................58, 64

Rules

18 U.S.C. section 241, 242, 245... 2, 3, 34-36, 43, 45, 65-73, 95

28 U.S.C. section 1367(d) ...........................................42

28 U.S.C. section 1291 ............................................10

28 U.S.C. section 1367 ...........................................10

28 U.S.C. sections 1331, 1343, and 2201 ...........................10

42 U.S.C. section 1983 .................................... *passim*

42 U.S.C. section 1985(3) ............................... *passim*

U.S. Const. amend. IV ........................................4, 102

U.S. Const. amend. XIV .....................................4, 100

Treatise

5 Wright & Miller, Federal Practice and Procedure, § 1219,
   at 277–278 ...........................................................64

# INTRODUCTION

This appeal is to address the District Court's error in granting defendants' motion to dismiss pursuant to Rule 12(b)(6), by erroneously applying a heightened pleading standard in the assessment of the complaint, by disregarding factual allegations, and ignoring theories of liability because of failure to make statutory references in the complaint.

Plaintiffs Yema Khalif and Hawi Awash are African-American business-owners who sued the City of Belvedere, Belvedere Police Department, and Police Officer Jeremy Clark. Plaintiffs allege that because Plaintiffs are Black, Officer Clark conspired with police officers of the City of Tiburon to violate Plaintiffs' Fourteenth Amendment rights to equal protection and violate Plaintiffs' Fourth Amendment rights by unreasonably detaining plaintiffs and intimidating them to interfere with Plaintiffs' business operations. Plaintiffs asserted the conspiracy and confrontation was fostered by local governmental customs, lack of training and supervision.

# JURISDICTIONAL STATEMENT

This case arises under the Civil Rights Act of 1871, 42 U.S.C. sections 1983 and 1985, with the assertion of violations of rights protected the Fourteenth and Fourth Amendments of the United States Constitution. The District Court had jurisdiction over this case pursuant to 28 U.S.C. sections 1331, 1343, and 2201. The District Court also had supplemental jurisdiction over Plaintiffs' claims under California law by virtue of 28 U.S.C. section 1367.

Pursuant to 28 U.S.C. section 1291, this court has jurisdiction over an appeal from a final order, entered on May 31, 2023, by which the District Court granted Defendants' motion to dismiss and declined to exercise supplemental jurisdiction over Plaintiffs' supplemental claims in light of its ruling in favor of Defendants on Plaintiffs' federal claims. 1-ER-2—9. On June 20,2023, Plaintiffs timely filed their notice of appeal. 2-ER-297—301.

# STATEMENT OF ISSUES

Plaintiffs' action was dismissed by an order granting a motion to dismiss, pursuant to Rule 12(b)(6).

This appeal presents the issues of:

Do the allegations of a complaint, without citation to 42 U.S.C. section 1985(3), support a claim for relief available pursuant to sections 1983 and 1985(3), including relief for a conspiracy of police officers to intimidate Plaintiffs' to present an obstacle to Plaintiffs' liberty, including Plaintiffs' attempts to engage in commerce, operate their business?

Do Plaintiffs adequately assert claims based on 42 U.S.C. sections 1983 and 1985(3) based upon the standards set forth by the Supreme Court in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), which recognized the viability of claims based upon a police officer's involvement and direct and circumstantial facts indicating the officer's intention to unlawfully discriminate?

Contrary to the District Court's order dismissing this action, the answers to each of those questions is "Yes."

## STATEMENT OF PRIMARY AUTHORITIES

The primary authorities asserted are the Fourteenth and Fourth Amendments of the United States Constitution, and 42 U.S.C. sections 1983 and 1985(3), which are set forth verbatim in an addendum to this brief.

## STATEMENT OF THE CASE

Here are the facts relevant to the dismissal of plaintiffs' action pursuant to Rule 12(b)6), which is the subject of this appeal.

### A.  ORDER GRANTING MOTION TO DISMISS PRESENTED FOR REVIEW BY THIS APPEAL

Leading to this appeal, the District Court entered an Order Granting Motion to Dismiss. 1-ER-3.

The order dismissed the Third Amended Complaint ("TAC") of plaintiffs, in which plaintiffs Yema Khalif and Hawi Awash ("Plaintiffs") asserted violations of their civil rights based upon racial discrimination against plaintiffs as African-Americans by defendants City of Belvedere, Belvedere Police Department, and police officer Jeremy Clark (unless otherwise indicated by context, collectively "Belvedere" or "Defendants"), as will be described in more detail. 2-ER-106—113, 119—124.

## B. FILING OF ACTION AND FIRST AMENDED COMPLAINT

This action was initiated by the filing of a Complaint for Damages on July 13, 2022. 2-ER-263. The Complaint set forth claims for damages, pursuant to 42 U.S.C. section 1983, for violations of the Fourteenth and Fourth Amendments, asserted that Plaintiffs as Blacks, were racially profiled, targeted, falsely detained, arrested, searched, harassed, intimidated and threatened by police officers while they worked in their upscale clothing boutique store, called Yema, located in Tiburon, California, and were harassed by police officers, of both the Tiburon Police Department and the Belvedere Police Department. 2-ER-263—296.

Plaintiffs filed a first amended complaint, which rendered a pending motion to dismiss moot. 2-ER-235, 234.

When plaintiffs filed a Second Amended Complaint that rendered another motion to dismiss moot. 2-ER-206, 205.

### C. HEARING ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

#### 1. Allegations of Second Amended Complaint

The only hearing that occurred in this matter was the hearing on defendants' motion to dismiss the Second Amended Complaint. 1-ER—9. That hearing set the stage for the filing of the TAC and the District Court's order dismissing it

The Second Amended Complaint ("SAC") asserted violations of civil rights, referring to 42 USC §1983 and *Monell*, which included claims against Belvedere based upon violations of: (1) Fourteenth Amendment for denial of equal protection; (2) Fourth Amendment for prolonged detention; (3) Fourth Amendment for unlawful arrest: (4) Fourth Amendment for deprivation of liberty without due process; (5) *Monell*, policy of failure to train and supervise; (6) Assault. ER-206. Theories of liability (1) – (4), and (6), were accompanied by allegations of failure to intervene. 2-ER-

206—233. The Second Amended Complaint also asserted state claims of: (7) Negligent training; (8) Violation of the Bane Act; and (9) Respondeat Superior. *Ibid.*

Generally, the factual allegations of the SAC were included in the TAC – which was dismissed. So, a more detailed recitation of the facts of the TAC will be provided later.

Regarding the circumstances, the SAC, included that Plaintiffs "are readily recognizable as Black," are owners of Yema (sometimes referred to as "The Store"), "an upscale clothing boutique located at 10 Main Street, Tiburon, California." 2-ER-207. "They are the only Black-owned business in Tiburon and one of very few in Marin." *Ibid.* "They opened The Store in February 2020, are long-time residents of Tiburon, and are well-known to the BELVEDERE and Tiburon communities and local business owners. They each were and are well-known to the respective town officials and individual officers, including

BELVEDERE Police Officer JEREMY CLARK (hereinafter 'CLARK'), by name and as the owners of The Store." *Ibid.*

Further, the SAC asserted: "Defendants, specifically CLARK and two Tiburon Police Department (hereinafter 'TPD') officers, Sgt. Michael Blasi (hereinafter 'Blasi') and Officer Isaac Madfes (hereinafter 'Madfes'), despite knowing their identities and ownership of The Store, profiled, targeted, falsely detained, arrested, searched, harassed, intimidated, and threatened Plaintiffs' safety, emotional health and well-being, and lives while they worked in The Store late the night of the incident." 2-ER-208. Further, the SAC included that the confrontation was the result of a conspiracy of the officers who orchestrated the confrontation to send Plaintiffs "the message that they were not welcome" in the local business and social communities because they are Black. 2-ER-208.

The Second Amended Complaint stated that the police officers' confrontation of Plaintiffs was planned in advance and that Belvedere's Officer Clark "participated in the

planning despite his knowing that the activities were unauthorized, illegal, and in violation of Plaintiffs' rights under the United States Constitution and California State Law." 2-ER-208. Further, "the conspiracy included CLARK standing in the shadows away from The Store entrance, place his hand on his service revolver, and began what Plaintiffs perceived as removing it from its holster. CLARK knew that in doing so, this action would cause great fright, anxiety, and fear to Plaintiffs for their lives, safety, and well-being. He did so because YEMA and HAWI are of color and the only Black merchants in Tiburon or BELVEDERE." 2-ER-208—209.

### 2. Hearing on Motion to Dismiss Second Amended Complaint

At the hearing on the motion to dismiss the second amended complaint, the District Court observed: "this case needs to get resolved. It's not a case that anybody probably wants to try. But I don't know that it's a very high-dollar case. Like I said, there is something there. But I would hope

– and I'm happy to help you all in terms of figuring out how to get you to a place where this case can get resolved." 1-ER-12.

At the hearing on the motion to dismiss, the District Court marched through the theories of liability and ruled on their sufficiency. 1-ER-10-32.

Relative to the first claim for violation of Fourteenth Amendment, the Court observed the claim was brought against Officer Clark and included a direct infringement claim and a failure to intervene claim, stating that those theories are "separate and distinct elements." ER-110. Relative to direct infringement, the District Court stated: "There's two allegations that are required under Ninth Circuit law. One, that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protective class; and two, resulting injury." [¶] The problem is that it is required to be alleged differential treatment. And differential treatment must be shown by individuals similarly situated." 1-ER-14. "But this

particular claim, if you're alleging differential treatment,
there needs to be allegations of other similarly situated shop
owners. The person who lived across the street is a resident,
not a shop owner. And that's the only allegation that exists
with respect to differential treatment." 1-ER-15-16.
"Second," the Court said, "there needs to be sufficient
allegation about actionable injury. And, again, I don't know
what that is in this particular case because it hasn't been
alleged." 1-ER-16.

Relative to the second claim, for violation of Fourth
Amendment, prolonged detention and failure to intervene,
the District Court stated: "I'm prepared to deny." 1-ER-18.
After some discussion regarding the confrontation by the
three police officers and the plaintiffs and the District
Court's observation that the officers, or at least one of them,
ordered the plaintiffs to leave their own store, and
defendant's assertions regarding the number of minutes
involved in the encounter, counted to be "nine minutes in the
video," the Court stated: "perhaps the better course is,

because you've got to revise this anyway, it is for you to give

– is to grant with leave to amended on this one as well. This

is the strongest claim to extent – of all the claims, it seems to

me." 1-ER-19—21. With respect to Clark, the Court asked,

considering "he was not the primary person, given that he

said nothing … what is it that he did? And what is his

obligation with respect to the person who was the primary

person there? And – and that's, you know, and – and so his

role is in fact important to articulate in terms of a

complaint." 1-ER-22-23.

Regarding the claim based on *Monell*, the fifth theory

of liability, the District Court observed: "If you don't have

the direct claim, you don't have a *Monell* claim." 1-ER-24.

Discussing the *Monell* claim, District Court stated: "I don't

know – there aren't allegations about supervision." 1-ER-24-

25. Therefore, the District Court stated that the complaint

has to allege facts that would implicate the city, including

facts of deliberate indifference. 1-ER-25.

In conclusion, the District Court stated: "So we don't throw it all out there. And I tell you in 1983 cases, I do try to make sure that the pleadings are accurate because I always get, and I will get if this case doesn't get resolved, I'll get a motion for summary judgment. [¶] And if I don't have a good pleading, it makes my life very complicated. So I do try to make sure that the pleadings are clear about the basis for the allegations and who each claim relates to." 1-ER-30.

## D.    THE THIRD AMENDED COMPLAINT

Regarding the context of conspiracy involving Tiburon and Belvedere to subjugate because of race, the TAC included the contextual facts regarding Tiburon's involvement, stating: "Prior to this litigation, Plaintiffs resolved the issues presented here with the City of Tiburon, Officer Madfes, and Sgt. Blasi. By this action, Plaintiffs seek relief from the CITY OF BELVEDERE, BPD, and OFFICER CLARK for their role in the invidious discrimination against them." 2-ER-109.

The TAC stated that the action was brought against Belvedere, including Officer Clark, "based upon their role in a confrontation with Plaintiffs that was initiated by" Tiburon police officers, Officer Isaac Madfes and ("Officer Madfes") and Sergeant Michael Blasi (hereinafter "Sgt. Blasi"), and that Officer Clark "participated in that confrontation, supported it, conspired with Officer Madfes and Sgt. Blasi to confront Plaintiffs to violate their Civil Rights, and failed to intervene to prevent or end it sooner." 2-ER-115.

Officer Clark "acted under color of law in his role in the confrontation as he wore the uniform of a police officer and demonstrated his readiness to use deadly-force, by placing his hand on his handgun, posturing his readiness to draw the handgun from its holster with his attention directed at Plaintiffs, and KHALIF in particular, with the effect to maintain subjugating, subordinating, demeaning control over KHALIF, AWASH … and treating them as members of an inferior caste."  2-ER-115.

Further, Plaintiffs asserted that such confrontations are "part of a systemic approach towards Blacks that are designed to deprive Blacks of equal protection of the laws, deprive them of due process relative to their substantive rights, and to obstruct or delay the opportunity of Blacks, including KHALIF and AWASH, from enjoying 'unalienable rights' of 'Life, Liberty and the Pursuit of Happiness' that were the foremost principles of the Declaration of Independence." 2-ER-109. Further, Plaintiffs set forth: "Such confron[t]ations of Black persons are tools for 'denoting the inferiority' of Black persons as part of 'the Negro group,' tools that are meant to instill a 'sense of inferiority' and to undermine 'the motivation' of Black persons to enjoy the full benefits of American citizenship." *Ibid.*; quoting *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 494 (1954).)

Like prior versions, the TAC reiterated the circumstances of the City of Belvedere, where with "a population of approximately 2,100," of whom "few, if any, are

African-American residents," and where there are "no African-American police officers," within the County of Marin, with "a population of approximately 250,000, with approximately 80% (200,000) being White and 1% (25,000) being Black." 2-ER-106—107.

## 1. Custom of Harassment of Plaintiffs, Because They Are Black, Prior to the Confrontation

Against, Plaintiffs set forth that they "are readily recognizable as Black," are owners of Yema (sometimes referred to as "The Store"), "an upscale clothing boutique located at 10 Main Street, Tiburon, California." 2-ER-107. "They are the only Black-owned business in Tiburon and one of very few in Marin." *Ibid.* "They opened The Store in February 2020, are long-time residents of Tiburon, and are well-known to the BELVEDERE and Tiburon communities." 2-ER-107—108.

TAC described: "As 'Blacks,' Plaintiffs were harassed, detained, and threatened as they lawfully performed

business activities in their shop in the middle of the night in their effort to pursue the American Dream by working instead of comfortably sleeping, to re- stock their store with cutting-edge clothing, striving to offer customers the most up-to-date fashions to take advantage of trends inherent to the business of fashionable and current clothing in their effort to compete in a very competitive industry." 2-ER-108. "Plaintiffs were identifiably 'Black' and their store was iden[ti]fiably and know[n] to be a Black-owned business." *Ibid.*

## 2. Facts Showing Intentional Discrimination, Harassment, Based on Race; Police Officers' Knowledge of Identities of Plaintiffs Prior to Confrontation

Regarding the consciously intentional discrimination, Plaintiffs stated: "Plaintiffs were and are each well-known to the respective town officials and individual officers, including OFFICER CLARK, by name and as the owners of

YEMA-Tiburon" and despite that knowledge engaged, with the two Tiburon officers, in the confrontation of Plaintiffs "despite knowing their identities and ownership of YEMA-Tiburon," a confrontation that "profiled, targeted, falsely detained, arrested, searched, harassed, intimidated, and threatened Plaintiffs' safety, emotional health and well-being, and lives while they worked." 2-ER-109—110. "These actions were intended, taken to, and did send them the message that they were not welcome in the Tiburon and BELVEDERE business and social communities simply because of the color of their skin. The implied message was that they should close YEMA-Tiburon and leave Tiburon." 2-ER-110.

Officer Clark, during six months on the job, "had driven and walked past YEMA-Tiburon many times both as a police officer and/or as a private citizen" and "cannot credibly maintain he did not know Plaintiffs owned YEMA-Tiburon nor that he did not recognize them on the evening at issue, particularly due to their skin color." 2-ER-117.

Additionally, Plaintiffs set forth facts regarding custom, systematic discriminatory actions taken against them by Belvedere and Tiburon prior to the event at issue, stating that Plaintiffs "have been stopped by both agencies, detained, questioned, required to produce identification, had driver's licenses with photographs and vehicle registrations checked, and were interrogated without good cause." 2-ER-117. Clark and the other officers knew this. 2-ER-117—118.

Clark knew this at the time of the confrontation. *Ibid.* "When Madfes and Blasi persisted in pressing KHALIF for identification, CLARK knew both officers possessed this information already, CLARK had this information, and it was immediately accessible on their BPD and TPD data base." *Ibid.* Clark furthered the conspiracy by failing to intervene despite his own knowledge; he would have intervened had Plaintiffs been White. 2-ER-117—118.

Based on the officers' prior awareness of the identities and roles of Plaintiffs' as owners of The Store, Yema, where the confrontation took place, plaintiffs alleged, on

information and belief, "that prior to initiation of the events which were about to unfold, CLARK, Madfes, and Blasi, met, communicated, discussed, planned, and/or coordinated and conspired to take the actions described herein." 2-ER-110.

### 3. Officer Clark Participated in a Coordinated Confrontation in Accordance with Officers' Conspiracy

Plaintiffs' set forth the facts that: "There was no emergency, urgency, danger, or any other legitimate concern of these police officers regarding the activities occurring inside YEMA-Tiburon before, during, nor following the confrontation." 2-ER-110.

Further, the TAC asserted that "[p]art of the conspiracy included CLARK standing in the shadows away from YEMA-Tiburon entrance, place his hand on his service revolver, and began what Plaintiffs perceived as removing it from its holster. CLARK knew that in doing so, this action would cause great fright, anxiety, and fear to Plaintiffs for their lives, safety, and well-being. He did so because

KHALIF and AWASH are of color and the only Black merchants in Tiburon or BELVEDERE." 2-ER-110—111. Plaintiffs asserted: "This action is brought because Plaintiffs were treated differently because they were Black and that they would not have suffered the different treatment if they had not been Black or had not been associated with a Black-owned business." 2-ER-108.

Plaintiffs alleged factual details of the confrontation, including that it lasted approximately 15 minutes and that the fact that a confrontation had occurred was video-recorded Officer Madfes' Body Cam. 2-ER-118. Further details were stated, including that initially Officer Madfes "stood outside the door and demanded that KHALIF, AWASH, and their friend each 'prove who you are'" and "'what are you doing here at the store late at night?'" 2-ER-118. Khalif responded, "we are doing great, there is no problem. We are just doing our thing. There is no crime going on and ***just going about ou[r] business***." *Ibid.*; emphasis added. "Madfes continued to harangue, harass,

intimidate, and interrogate KHALIF while CLARK stood off to the side in the shadows with his hand on the handle of his service revolver." *Ibid.* After Khalif asked for a supervisor, Sgt. Blasi came to the scene "and continued the same unwarranted, unlawful, illegal, and racially biased insistence that KHALIF produce his driver's license." *Ibid.* Plaintiffs alleged their belief "that Blasi had been monitoring events" the whole time, stating: "The unfolding events had been carefully planned, plotted, and were being executed." *Ibid.* "At one point, Blasi stated: 'if it's your store, put your key in the door lock and prove it.'" 2-ER-119. As Khalif started to comply, "the voice of a White male adult neighbor who resided across the street, shouted from his balcony: 'HEY! That's his store! He's the owner!'" *Ibid.*

Plaintiffs asserted that they were being treated differently because they were Black and the facts supporting that conclusion included that the officers readily accepted the White neighbor's statement, while the officers were

unwilling to accept Plaintiffs' statements that it was their store. *Ibid.*

Plaintiffs' included the facts that "the neighbor was quoted by local news agencies: 'When voices became loud and animated, it sounded like a fist-fight was going to happen. How they don't know YEMA [KHALIF] is beyond me. It looked like they were harassing him and I thought 'this has gone on for several minutes,' it just felt like it was going to progress into something ugly." 2-ER-119.

Regarding Officer Clark's role, in addition to the facts alleged regarding his awareness of the identities of the Plaintiffs and the custom of the police from both departments to stop Plaintiffs on the street to challenge their activities and identities for no reason, during the confrontation Plaintiffs' TAC described that he was "Lurking in the shadows outside YEMA-Tiburon" and when Officer Madfes instructed KHALIF to use the keys for the door, that it appeared to that Clark "was beginning to remove the gun from its holster," and that he was doing so to be

"threatening, intimidating, harassing," and for the purpose

of "causing great fear to Plaintiffs for their safety, health,

and well-being." 2-ER-119.

### 4. Facts and Circumstances Supporting *Monell* Liability of City and Police Department

In further support of *Monell* liability, the TAC referred

to the failure to train or supervise officers to abide by the

Belvedere Police Department Mission Statement "to provide

safety and security through police services; enforce the laws

in the interest of justice; cultivate a strong feeling of

community and promote a sense of compassion and concern

for the quality of life of all citizens in the City of Belvedere"

and other policies. 2-ER-120—122. Despite that and other

policies purporting to require "bias-based policing training

will thereafter be required to complete an approved refresher

course every five years or sooner if deemed necessary in

order to keep current with changing racial, identity and

cultural trends," the TAC asserted that the City and

Department, through the Chief of Police, "consciously, deliberately, and negligently failed" to failed instruct Officer Clark to follow such policies by failing to provide training, supervision, observation of Officer Clark and failure to instruct Clark to follow such policies, including a failure to instruct to intervene with other police officers "engag[e] in unlawful, unconstitutional, wrongful, Race-based harassment of any person." 2-ER-120—122.

Plaintiffs asserted that Belvedere "engaged in racial profiling which is expressly prohibited by law, to wit, California Penal Code § 13519.4 (f) states: 'A peace officer shall not engage in racial or identity profiling.'" 2-ER-124.

## 5. Allegations Regarding Conspiracy to Intimidate Based on Race to Interfere with Plaintiffs' Commercial Activities; Citations to 18 U.S.C. §§ 241, 242, 245

In support of the three federal causes of action, for violation of equal protection under the Fourteenth Amendment, unlawful detention under the Fourth

Amendment, and for municipal liability pursuant to *Monell*, plaintiffs asserted conspiracy to violate rights with citations to 18 U.S.C. sections 241, 242, and 245. 2-ER-125—126, 128—129, 130—131. Specifically, as to each of those causes of action, Plaintiffs' TAC asserted that Officer Clark "engaged in a systematic pattern of conduct, consisting of violence, intimidation, and humiliation, directed against Plaintiffs on account of Race, in violation of due process and equal protection of the laws guaranteed to Plaintiffs by the United States Constitution," in that his participation "in the confrontation was in conspiracy with Officer Madfes and Sgt. Blasi," in of 18 U.S.C. § 241, which, as the TAC asserted, "prohibits two or more persons from 'conspire[ing] to injure, oppress, threaten, or intimidate any person in any State … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.'" 2-ER-125—126, 128—129, 130—131. Plaintiffs also alleged that Clark's participation violated 18 U.S.C. § 245 (b)(2)(C),

"which prohibits all persons, 'whether or not acting under color of law, by force or threat of force,' from acting in a way that 'willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with'" "any person because of his race, color, religion or national origin and because he is or has been … applying for or enjoying employment…."' *Ibid.* Further, plaintiffs asserted 18 U.S.C.A. § 242, as prohibiting Clark "from conspiring with Officer Madfes and Sgt. Blasi 'under color of any law, statute, ordinance, regulation, or custom' to 'willfully subject[]' Plaintiffs 'to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race,' including the rights of 18 U.S.C.A. §§ 241 and 245." *Ibid.*

### 6. First Cause of Action, Fourteenth Amendment, Against Officer Clark for Denial of Equal Protection and Failure to Intervene

In their first cause of action, for violation of the Fourteenth Amendment, for denial of equal protection, Plaintiffs' referred to the general allegations, recounted above. ER-92. Plaintiffs asserted their civil rights, quoting section 1983 as providing: "'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 2-ER-125.

Plaintiffs further asserted that their "Race was a motivating factor in CLARK's participation in the detention,

interrogation, harassment, arrest, and searching Plaintiff's pants pockets by telling him to remove his keys," and that he participated in actions that violated Plaintiffs' Constitutional Rights based on being Black. 2-ER-125.

Regarding disparate treatment suffered by Plaintiffs, they stated: "Business owners who are not Black have not been subjected to the type of confrontation suffered by KHALIF and AWASH. Other businesses are in the immediate area of YEMA-Tiburon and the owners and operators of those other businesses have not been subjected to the type of confrontation at issue here, despite those owners and operators sometimes working in their stores during the darkness of night. Such other clothing stores in the immediate vicinity of YEMA-Tiburon, include four other clothing stores on the same street in Belvedere-Tiburon within blocks of YEMA-Tiburon." 2-ER-127.

While the facts alleged by Plaintiffs showed that Officer Clark affirmatively participated in a conspiracy to deprive Plaintiffs, directly or indirectly, "of the equal

protection of the laws, or of equal privileges and immunities under the laws," by intimidating Plaintiffs on the basis of race in Plaintiffs' operations of their business, their employment (§ 1985(3)), the facts also demonstrate that Officer Clark failed to intervene by abiding by and promoting the conspiratorial plan to intimidate plaintiffs, instead of even belatedly intervening against the intimidating actions led by Officer Madfes and Sgt. Blasi. 2-ER-125—127.

### 7. Second Cause of Action, Fourth Amendment, Against Officer Clark for Prolonged Detention and Failure to Intervene

In the second cause of action, for violation of the Fourth Amendment, Plaintiffs asserted that Officer Clark's conspiracy with the Tiburon officers to intimidate Plaintiffs because of Plaintiffs' race also resulted in prolonged detention. 2-ER-128—129.

Again, the facts demonstrated that Officer Clark
remained loyal to the conspiracy with the Tiburon officers
and failed to intervene to protect the rights of Plaintiffs.
*Ibid.*

> **8. Third Cause of Action, *Monell* Liability of
> City and Police Department for Official
> Policy or Custom in Violation of Civil
> Rights**

In alleging that the City of Belvedere and its police
department were liable pursuant to *Monell*, plaintiffs
referred to the other allegations of the TAC, including the
conspiracy of Officer Clark with Tiburon officers to
intimidate Plaintiffs. 2-ER-129—131.

Summarizing the prior allegations, Plaintiffs stated:
"Defendants, at all relevant times, 'subjected' Plaintiffs, … to
the deprivation of their Fourteenth Amendment Right of
liberty by surrounding them, not allowing them to leave, and
holding them in reasonable fear for their lives since CLARK
had his hand on his gun and appeared to be removing it at

the same time KHALIF was reaching into his pants pocket

for his keys as demanded by Blasi." 2-ER-132.

Regarding the role of the public entities, Plaintiffs

asserted: "BELVEDERE's policies, procedures, and training

expressly or implicitly permitted the actions of OFFICER

CLARK to violate Plaintiffs' rights to conduct their business

and employment within the site of their business operations,

YEMA-Tiburon, without being subjected to being injured,

intimidated or interfered with, or being subjected to

attempts to injure, intimidate or interfere with their

employment." 2-ER-131.

Regarding the deficiencies of the Belvedere policies,

and Belvedere's ratification of Officer Clark's participation

in the conspiracy to intimidate Plaintiffs as Blacks, Plaintiffs

stated that although Tiburon reacted to the event by

amending its policies, procedures, and training to prevent

the type of injury, intimidation, or interference that

occurred, but "BELVEDERE has refused to amend its

policies, procedures, and training," which continue to

expressly or implicitly permit "actions, like those of OFFICER CLARK, to violate rights, because of a person's Race, color, religion or national origin, of persons to conduct of persons to conduct their business and employment within the site of their business operations without injury, intimidation, or interference with, or attempts to injure, intimidate or interfere with such persons." 2-ER-132.

## E.    MOTION TO DISMISS THIRD AMENDED COMPLAINT AND ORDER GRANTING IT

Belvedere filed a motion to dismiss the TAC, attacking all causes of action. 2-ER-79. Because the District Court only addressed the federal claims in its Order Granting Motion to Dismiss, only the federal claims are addressed here. Plaintiffs retain the right to file their state law claims in state court. 28 U.S.C. § 1367(d).

### 1. Defendants' Motion to Dismiss

In its motion to dismiss, Defendants disregarded much of the allegations in the TAC to assert that they could have no liability on the premise that "Officer Jeremy Clark did

not speak to or otherwise interact with the Plaintiffs," that "all of the allegations focus on the interaction between Plaintiffs and two other officers who work for a different police department in a different city." 2-ER-85. Belvedere asserted that Plaintiffs' allegations that Plaintiffs allege "that Officer Clark 'conspired' with the other two officers to violate Plaintiffs' constitutional rights" were too conclusory. *Ibid.*

Regarding the references in the TAC to 18 U.S.C. section 241, 242, and 245, Belvedere asserted the "prohibit certain types of criminal activities" without a private right of action. 2-ER-92–93, 98.

Relative to Plaintiffs' first cause of action for violation of the Fourteenth Amendment by denial of equal protection, Defendants argued that Plaintiffs failed to assert facts regarding Officer Clark. 2-ER-93—94. They also contended the facts did not support a theory of failure to intervene. 2-ER-94—96.

Regarding the second cause of action for violation of the Fourth Amendment, Defendants argued that Plaintiffs' allegations were too conclusory. 2-ER-96—97. Again, they asserted the facts did not support failure to intervene. 2-ER-98.

Regarding the third cause of action against the government entities based on *Monell*, Defendants asserted it was insufficiently pled. 2-ER-99—100. And defendants asserted that allegations of inadequate training and supervision was insufficient. 2-ER-100—102. Defendants also asserted there was no causation by any *Monell* violation. 2-ER-102—103.

## 2. Plaintiffs' Opposition to Motion to Dismiss

Plaintiffs opposed the motion to dismiss. 2-ER-52.

### a) Plaintiffs' Reference to 42 U.S.C. § 1985(3) as the Civil Liability "Analogue" to Criminal Provisions of 18 U.S.C. §§ 241, 242, and 245

Regarding Plaintiffs' references in the TAC to 18 U.S.C. sections 241, 242, and 245, which set forth standards for criminal liability, Plaintiffs addressed the issue, explaining that the references identified rights, privileges, and immunities of Plaintiffs sufficient for § 1983 claims and that the facts alleged support liability of Officer Clark "based on 42 U.S.C. §1985(3), which is the civil analogue to those criminal statutes." 2-ER-57—58. Plaintiffs pointed out that 42 U.S.C. sections 1983 and 1985(3) provide for a private right of action for misconduct that criminalized under 18 U.S.C. sections 241, 242, and 245, and that Plaintiffs alleged sufficient facts to support causes of action. 2-ER-65—66. Plaintiffs asserted the facts alleged were sufficient to support their claims that "Plaintiffs were subjected to intimidation based upon their race based upon their roles as

shopkeepers, selling clothing, involved in commerce." 2-ER-66.

### b) Motion Was to Be Assessed Based on Facts, Not Statutory Citations

Further, Plaintiffs asserted: "Because federal law provides for relief based on the facts alleged, the Court should conclude that the 3AC sufficiently asserts viable claims against defendants or allow Plaintiffs to amend to add the references to section 1985(3) federal laws provide relief for their claims." 2-ER-57—58. Plaintiffs otherwise requested "one more opportunity to amend" to address any deficiencies. 2-ER-58.

### c) Plaintiffs' Contested Defendants' Request for Judicial Notice of Police Body-Cam Video

Regarding Defendants' request for judicial notice, Plaintiffs asserted the warning from *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), that "'The overuse and improper application of judicial notice and

the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." 2-ER-59—61.

### d) Plaintiffs' Opposition Supported Claims for Violations of Fourteenth and Fourth Amendments (First and Second Causes of Action)

While Plaintiffs' opposition did not separate arguments relative to the Fourteenth Amendment, implicated by Plaintiffs' first cause of action for violation of equal protection, and the Fourth Amendment, implicated by the second cause of action for prolonged detention, the points and authorities addressed both the Fourteenth and Fourth Amendments. 2-ER-61—73.

Plaintiffs included Ninth Circuit authority for the points that police confrontations, without an arrest, but where officers "conducted the search and seizure in the presence of others in order to humiliate plaintiff, and that he was humiliated," violated "[t]he guarantee against unreasonable searches and seizures contained in the Fourth Amendment has been made applicable to the states by reason of the due process clause of the Fourteenth Amendment." 2-ER-71; quoting *Cohen v. Norris*, 300 F.2d 24, 26-27 (9th Cir. 1962) (defendant police officers without a search warrant searched plaintiff and his automobile); citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961).) Going on Plaintiffs recited: "'In our view *Monroe v. Pape* announces the rule that an allegation of a purpose to discriminate or a purpose to deprive one of any federal right, is not essential to the statement of a claim under § 1983 predicated on an alleged violation of the due process clause of the Fourteenth Amendment.'" 2-ER-71; quoting *Cohen* at 29. "'The security of one's privacy against arbitrary intrusion by the police is

"at the core of the Fourth Amendment."" 2-ER-71—72;

quoting *Cohen* at 31; quoting *Wolf v. People of State of Colorado*, 338 U.S. 25, 27 (1949).

The authorities asserted by Plaintiffs' opposition, therefore, supported their causes of action based on both the Fourteenth and Fourth Amendments. 2-ER-65—73.

Regarding the sufficiency of Plaintiffs' allegations to support causes of action for violation of the Fourteenth and Fourth Amendments, Plaintiffs cited the guidance from the Supreme Court in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), including the Court's description of actionable conspiracy in violation of Fourteenth Amendment rights under section 1983 if a Plaintiff can prove a police officer "somehow reached an understanding to deny" a plaintiff service at store or to cause her arrest because of race or association with a race, Blacks. 2-ER-63—64. "The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection

rights, whether or not the actions of the police were officially authorized, or lawful." 2-ER-64; quoting *Adickes* at 152, citing, *inter alia*, *Monroe v. Pape*, 365 U.S. 167 (1961). Plaintiffs referred to *Adickes* instruction that even when a plaintiff has no specific "knowledge of an agreement" involving a police officer, "the sequence of events" may show "a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses." 2-ER-64; quoting *Adickes* at 156-157. Further, Plaintiffs recited *Adickes*, where the Court explained: "'If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.'" 2-ER-64; quoting *Adickes* at 158-159.

The opposition also cited *Lombard v. State of La.*, 373 U.S. 267 (1963), as analogous, wherein the Court found that

a city's mayor and police, without any written ordinances determined "that the city would not permit Negroes to seek desegregated service in restaurants"; "Consequently, the city must be treated exactly as if it had an ordinance prohibiting such conduct." 2-ER-65.

### e) Plaintiffs' Opposition Demonstrated Adequacy of Pleading Against Entities Based on *Monell*

The foregoing citation to *Lombard* also supported the *Monell* theory of liability against the Defendant City and Police Department herein. 2-ER-65—66.

Further, the opposition referred again to *Adickes* as authority supporting the sufficiency Plaintiffs' claims pursuant to *Monell*, quoting: "'Congress included customs and usages within its definition of law in [§] 1983 because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South. … "(E)ven where the laws are just and equal on their face, yet, by a systematic maladministration of them, or a neglect or

refusal to enforce their provisions, a portion of the people are denied equal protection under them." Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.'" 2-ER-73; quoting *Adickes* at 167-168.

Regarding allegations of custom and usage that support a *Monell* claim, Plaintiffs referred to *Adickes*, wherein the Court stated: "'It would be a narrow conception of jurisprudence to confine the notion of "laws" to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice … can establish what is state law. The equal protection clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy, such as those of which petitioner complains, are often tougher and truer law than the dead words of the written text.'" 2-ER-64—65; citing *Adickes* at 168; quoting *Nashville, C. & St. L.R. Co. v. Browning*, 310 U.S. 362, 369 (1940).)

### 3. Belvedere's Reply to Plaintiffs' Opposition

In their reply, Defendants ignored Plaintiffs' reference to section 1985(3) and Plaintiffs' assertions that the facts supported a cause of action based upon that provision. 2-ER-43—51.

Otherwise, Defendants argued that the Court had properly taken judicial notice of the body-cam video before and should do so again. 2-ER-44—45. Defendants asserted that it was Plaintiffs, not them, who were misinterpreting the impact of *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998. ER-12. While it was Defendants who first cited *Khoja* in support of their request for judicial notice, in their Reply they chastised Plaintiffs for discussing it and asserted that *Khoja* was inapplicable because of its factual setting and that Plaintiffs "cherry-picked quotes." 2-ER-45.

Defendants argued that the authorities cited by Plaintiffs should be distinguished based on facts, trying to distinguish *Cohen v. Norris*, 300 F.2d 24, *Adickes v. S. H.*

*Kress & Co.*, 398 U.S. 144, and *Lombard v. State of La.*, 373 U.S. 267. 2-ER-47—49.

Ignoring the allegations of the TAC that set forth a pattern of harassing behavior that Plaintiffs endured prior to the dramatic incident that prompted this action, during which the police ramped up their intimidation, Defendants argued that Plaintiffs had failed to demonstrate a custom of racial harassment that could be considered "well settled city policy." 2-ER-39. Ignoring the alleged facts, Defendants stubbornly maintained that Plaintiffs' claims were based "on a single incident." 2-ER-49.

### 4. District Court's Order Granting Motion to Dismiss

In its Order Granting Motion to Dismiss, at the heading of "ANALYSIS," the Court made a footnote, stating: "The Court notes that throughout their opposition, plaintiffs indicate they have a right of action under 42 U.S.C. section 1985(3) (conspiracy to interfere with civil rights). This

statute is not included anywhere in the TAC and is not before the Court." 1-ER-5, fn. 4.

Regarding the first cause of action for violating the Fourteenth Amendment right to equal protection directly, through conspiracy, and by failure to intervene, the Court stated it "agrees with defendants that plaintiffs fail to adequately allege intent. The TAC alleges broadly that there are other store owners near plaintiffs' store who are not black and have worked at their stores at night and "have not been subjected to the type of confrontation at issue here." 1-ER-5—6 (referring to TAC, ¶ 53, 2-ER-127). Further, the Court stated: "These allegations are vague and conclusory. They do not allege that law enforcement has been aware of the other store owners working at night such that they chose not to intervene. Further, they do not indicate that Clark the defendant at issue, has treated other store owners differently or that he has even had an opportunity to do so." 1-ER-6.

As to the second cause of action alleging violation of the Fourth Amendment "by subjecting plaintiffs to prolonged detention by putting his hand on his gun, indicating that he would use the gun if plaintiffs did not comply with the officers," the Court concluded that Plaintiffs had not responded to Belvedere's arguments that "plaintiffs have not adequately alleged they were detained and have not alleged sufficient conduct by Clark to show that he directly detained plaintiffs, conspired with others to detain plaintiffs, or failed to intervene in the detention of plaintiffs." 1-ER-6—7.

Regarding the third claim is for *Monell* liability against defendants Belvedere and BPD, the Court concluded: "Plaintiffs have failed to adequately allege their Fourteenth and Fourth Amendment claims. Accordingly, their Monell claim is dismissed." 1-ER-7.

Regarding denial of leave to amend, the District Court stated: "plaintiffs have had multiple opportunities to amend and the benefit of detailed guidance from this Court on what would need to be done to successfully allege their claims.

Still, plaintiffs failed to address the deficiencies in the Second Amended Complaint. This, and their failure to even attempt to address key arguments in the operative motion to dismiss indicate to the Court that allowing leave to amend the federal claims would be futile." 1-ER-7.

## SUMMARY OF ARGUMENT

The District Court failed to recognize appropriate factual allegations that supported Plaintiffs' claims for violation of equal protection protected by the Fourteenth Amendment, for unreasonable detention in violation of the Fourth Amendment, and for municipalities liability under *Monell*.

In effect, the District Court erroneously imposed a heightened pleading standard. That was reflected by the Court's conclusion that Plaintiffs' complaint could not support a right of action under 42 U.S.C. section 1985(3) (conspiracy to interfere with civil rights) because that statute is not included anywhere in the TAC. 1-ER-5, fn. 4. That conflicts with *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) and *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). Although citation of the statute was not technically required, at minimum Plaintiffs should have been allowed to amend to cite the statute (in place of the criminal analogue statutes

they did cite). *Johnson*, 574 U.S. 10, 11; *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047–1048 (9th Cir. 2023).

Under the standards of pleading civil rights claims, Plaintiffs alleged sufficient facts to support their claims and the District Court made unsupported inferences against Plaintiffs and failed to make inferences that were supported in favor of Plaintiffs. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Leatherman, supra*, 507 U.S. 163, 164; *Naffe v. Frey*, 789 F.3d 1030, 1035-1036 (9th Cir. 2015).

Plaintiffs' allegations support causes of action for violation of the Fourteenth and Fourth Amendments, consistent with *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 159-159 (1970) and *Cohen v. Norris*, 300 F.2d 24, 26-27 (9th Cir. 1962).

Plaintiffs sufficiently asserted *Monell* liability. *Adickes,* 398 U.S. at 167-168; *Johnson, supra*, 574 U.S. at 11; *Leatherman, supra*, 507 U.S. at 164; *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1075, fn. 6 (9th Cir. 2020); *Horton v. City of Santa Maria*, 915 F.3d 592, 602-603 (9th Cir. 2019).

Relative to intent, the TAC asserted facts that the confrontation occurred despite direct evidence of the officers', including Clark's, awareness of the identities of Plaintiffs, circumstantial evidence that the confrontation for the purported reason of having Plaintiffs' identify themselves was just a pretext to further the intent to intimidate Plaintiffs and interfere with their business activities. *Arizona Students Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016).

The issues of law and facts supported permitting leave to amend relative to any technical deficiencies in pleading. *Arizona Students,* 824 F.3d at 871.

# ARGUMENT

## I. STANDARD OF REVIEW ON MOTION TO DISMISS IS DE NOVO

A district court's dismissal for failure to state a claim upon which relief can be granted is reviewed de novo. *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017). "We accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the plaintiffs." *Ibid.* "We also review de novo a district court's legal determinations, including constitutional rulings, and its determinations on mixed questions of law and fact that implicate constitutional rights." *Ibid.*

A district court's decision to dismiss a section 1983 action pursuant to Rule 12(b)(6) is reviewed de novo. *Patel v. City of Montclair*, 798 F.3d 895, 897 (9th Cir. 2015). Same with issues of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021)

## II. IT WAS ERROR TO DECLINE TO CONSIDER WHETHER THE FACTS ALLEGED SUPPORTED LIABILITY PURSUANT TO 42 U.S.C. § 1985(3)

### A. Civil Rights Claims Do Not Require Citations to Statutes (Like §§ 1983, 1985(3)

In its Order Granting Motion to Dismiss, the District Court at the heading of "ANALYSIS" inserted a footnote, stating: "The Court notes that throughout their opposition, plaintiffs indicate they have a right of action under 42 U.S.C. section 1985(3) (conspiracy to interfere with civil rights). This statute is not included anywhere in the TAC and is not before the Court." 1-ER-5, fn. 4.

While section 1985(3) was not cited in the TAC, such a citation was not required.

As stated by *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014), "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* at 11; citing *Leatherman v. Tarrant County Narcotics Intelligence*

*and Coordination Unit*, 507 U.S. 163, 164 (1993). Rather, the

Court instructed: "Federal pleading rules call for 'a short and

plain statement of the claim showing that the pleader is

entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not

countenance dismissal of a complaint for imperfect

statement of the legal theory supporting the claim asserted."

*Id.* at 11; see also, *Herrera v. Zumiez, Inc.*, 953 F.3d 1063,

1075, fn. 6 (9th Cir. 2020).

Based upon the foregoing authorities, Plaintiffs were

not required to "invoke" Section 1985(3) for the court to

consider whether the facts alleged in the TAC supported a

claim for conspiracy. Therefore, it was error for the District

Court to disregard Plaintiffs' arguments in opposition that

referred to that statute.

In their reply to the opposition to the motion to

dismiss, Defendants ignored Plaintiffs' reference to section

1985(3) and Plaintiffs' assertions that the facts supported a

cause of action based upon that provision. 2-ER-43—51.

Defendants had the opportunity to respond regarding

whether the facts supported theories of liability in light of section 1985(3), but they did refer to the statute nor Plaintiffs' arguments that liability was adequately asserted in light of it, appearing to concede that point.

**B.     At Minimum, Leave to Amend to Cite Section 1985(3), Should Have Been Granted**

Although reference to a statute to support a theory of liability is not required, to the extent that a court insists, *Johnson*, 574 U.S. 10, supra, stated: "For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983." *Id.* at 11. "'The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.'" *Ibid.*; quoting 5 Wright & Miller, Federal Practice and Procedure, § 1219, at 277–278. "'The court should freely give leave [to amend a pleading] when

justice so requires.'" *Ibid.*; quoting Fed. Rule Civ. Proc. 15(a)(2).

Also, in *Yoshikawa v. Seguirant*, 74 F.4th 1042, (9th Cir. 2023), the Court of Appeals recently instructed that a plaintiff who made allegations based on Section 1981 (which does not provide for a private civil action) should be replead based on Section 1983. *Id.* at 1047–1048. In reversing a dismissal, the Court allowed "Yoshikawa to replead his § 1981 claim as a § 1983 claim," acknowledging "that Yoshikawa separately raised a § 1983 claim against Seguirant, which the district court dismissed with prejudice," and instructed "the district court to allow Yoshikawa to replead his § 1981 claim against Seguirant as a § 1983 claim." *Id.* at 1047-1048; see also, p. 1048, fn. 7.

Like in *Yoshikawa*, where the plaintiff mistakenly referred to Section 1981, which did not provide for a civil action, in this action, Plaintiffs' TAC referred to violations of 18 U.S.C. sections 241, 242, 245, which are criminal statutes

that do not provide for a civil action. 2-ER-125—126, 128—129, 130—131.

Accordingly, at minimum, Plaintiffs here should have been allowed to replace their references to 18 U.S.C. sections 241, 242, and 245, with references to Section 1985(3). Allowing such an amendment would have been appropriate considering Section 1985(3) has been described as the civil "analogue" to the criminal law provisions of 18 U.S.C. § 241, 242, 245. *Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 814, fn. 31 (S.D.N.Y. 1979); quoting *United States v. Guest*, 383 U.S. 745, 762, 782 (1966); 2-ER-57—58, 65—66.

## III. <u>PLAINTIFFS ADEQUATELY PLED FEDERAL CAUSES OF ACTION</u>

### A. <u>Erroneously Heightened Pleading Standard Was Applied</u>

The record here demonstrates that the District Court imposed more strenuous pleading hurdles than established standards require. The District Court's improperly stringent approach was demonstrated by the Court's declination to

consider Plaintiffs' arguments that the facts alleged supported a theory of conspiracy under Section 1985(3). 1-ER-6. Moreover, the Court's further analysis of the pleading implicitly imposed a heightened pleading standard to Plaintiffs' federal claims of liability for Officer Carter's violation of the Fourteenth Amendment, Officer Carter's violation of the Fourth Amendment, and the municipalities' liability under *Monell*.

Regarding a cause of action based on 42 U.S.C. § 1983, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), stated it "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or territory.'" *Id.* at 924.

In *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, *supra*, the Court rejected "heightened pleading standard" for civil rights cases based on Section 1983. *Id.* at 164. The Supreme Court observed

that a Texas district court had dismissed complaints because they failed to meet the "heightened pleading standard" applied then by the Fifth Circuit, with the Supreme Court citing with approval the approach of the Ninth Circuit, stating: "'[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Id.* at 165; quoting *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cit. 1988). *Leatherman* further instructed: "[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.* at 168—169.

In *Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015) the Court explained: "'To state a claim under §1983, a Plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States and [2] must show that the alleged deprivation was committed by a

person acting under color of state law.'" *Id.* at 1035-1036; quoting *West v. Atkins*, 487 U.S. 42, 48 (1988); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). "Dismissal of a section 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe* at 1036; citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

Regarding the standard for review of a motion to dismiss, *Iqbal* explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal* at 678; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal* at 678; citing *Twombly* at 556. That pleading standard requires "more than a shear possibility that a Defendant has acted unlawfully "[w]here a complaint pleads facts that are 'merely consistent with' a Defendant's liability,

it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal* at 678; *Twombly* at 557.

Consistent with the foregoing authorities, Rule 9, regarding circumstances requiring heightened pleading requirements, does not specify any special standards for claims of violations of civil rights, whether based on section 1983 or section 1985(3).

Again referring to *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, *supra*, the Court instructed that claims pursuant to Section 1983 just need to "state[] simply, concisely, and directly events that, they alleged, entitled them to damages." *Id.* at 12. "Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Ibid.*

**B. Plaintiffs Adequately Alleged Facts of Conspiracy to Violate Plaintiffs' Civil Rights**

In support of the three federal causes of action, for violation of equal protection under the Fourteenth

Amendment, unlawful detention under the Fourth

Amendment, and for municipal liability pursuant to *Monell*,

plaintiffs asserted conspiracy to violate rights with citations

to 18 U.S.C. sections 241, 242, and 245. 2-ER-125—126,

128—129, 130—131. Specifically, as to each of those causes

of action, Plaintiffs' TAC asserted that Officer Clark

"engaged in a systematic pattern of conduct, consisting of

violence, intimidation, and humiliation, directed against

Plaintiffs on account of Race, in violation of due process and

equal protection of the laws guaranteed to Plaintiffs by the

United States Constitution," in that his participation "in the

confrontation was in conspiracy with Officer Madfes and Sgt.

Blasi," in of 18 U.S.C. § 241, which, as the TAC asserted,

"prohibits two or more persons from 'conspire[ing] to injure,

oppress, threaten, or intimidate any person in any State …

in the free exercise or enjoyment of any right or privilege

secured to him by the Constitution or laws of the United

States, or because of his having so exercised the same.'" 2-

ER-125—126, 128—129, 130—131. Plaintiffs also alleged

that Clark's participation violated 18 U.S.C. § 245 (b)(2)(C),
"which prohibits all persons, 'whether or not acting under
color of law, by force or threat of force,' from acting in a way
that 'willfully injures, intimidates or interferes with, or
attempts to injure, intimidate or interfere with'" "any person
because of his race, color, religion or national origin and
because he is or has been … applying for or enjoying
employment….'" *Ibid.* Further, plaintiffs asserted 18 U.S.C.
section 242, as prohibiting Clark "from conspiring with
Officer Madfes and Sgt. Blasi 'under color of any law,
statute, ordinance, regulation, or custom' to 'willfully
subject[]' Plaintiffs 'to the deprivation of any rights,
privileges, or immunities secured or protected by the
Constitution or laws of the United States, or to different
punishments, pains, or penalties, on account of such person
being an alien, or by reason of his color, or race,' including
the rights of 18 U.S.C.A. §§ 241 and 245." *Ibid.*

While those facts may not have supported civil liability under 18 U.S.C. sections 241, 242 and 245, they did support liability pursuant to Sections 1985(3) and 1983.

## C. Plaintiffs' TAC and Opposition to the Motion Adequately Showed Violations of Fourteenth and Fourth Amendments

While Plaintiffs' opposition did not separate arguments relative to the Fourteenth Amendment, implicated by Plaintiffs' first cause of action for violation of equal protection, and the Fourth Amendment, implicated by the second cause of action for prolonged detention, the points and authorities addressed both the Fourteenth and Fourth Amendments. 2-ER-61—73.

Plaintiffs included Ninth Circuit authority for the points that police confrontations, without an arrest, but where officers "conducted the search and seizure in the presence of others in order to humiliate plaintiff, and that he was humiliated," violated "[t]he guarantee against unreasonable searches and seizures contained in the Fourth

Amendment has been made applicable to the states by reason of the due process clause of the Fourteenth Amendment." 2-ER-71; quoting *Cohen v. Norris*, 300 F.2d 24, 26-27 (9th Cir. 1962) (defendant police officers without a search warrant searched plaintiff and his automobile); citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961).) Going on Plaintiffs recited: "'In our view *Monroe v. Pape* announces the rule that an allegation of a purpose to discriminate or a purpose to deprive one of any federal right, is not essential to the statement of a claim under § 1983 predicated on an alleged violation of the due process clause of the Fourteenth Amendment.'" 2-ER-71; quoting *Cohen* at 29. "'The security of one's privacy against arbitrary intrusion by the police is "at the core of the Fourth Amendment."'" 2-ER-71—72; quoting *Cohen* at 31; quoting *Wolf v. People of State of Colorado*, 338 U.S. 25, 27 (1949).

The authorities asserted by Plaintiffs' opposition, therefore, supported their causes of action based on both the Fourteenth and Fourth Amendments. 2-ER-65—73.

Regarding the sufficiency of Plaintiffs' allegations to support causes of action for violation of the Fourteenth and Fourth Amendments, Plaintiffs cited the guidance from the Supreme Court in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), including the Court's description of actionable conspiracy in violation of Fourteenth Amendment rights under section 1983 if a Plaintiff can prove a police officer "somehow reached an understanding to deny" a plaintiff service at store or to cause her arrest because of race or association with a race, Blacks. 2-ER-63—64. "The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful." 2-ER-64; quoting *Adickes* at 152, citing, *inter alia*, *Monroe v. Pape*, 365 U.S. 167 (1961). Plaintiffs referred to *Adickes* instruction that even when a plaintiff has no specific "knowledge of an agreement" involving a police officer, "the sequence of events" may show

"a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses." 2-ER-64; quoting *Adickes* at 156-157. Further, Plaintiffs recited *Adickes*, where the Court explained: "'If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.'" 2-ER-64; quoting *Adickes* at 158-159.

The opposition also cited *Lombard v. State of La.*, 373 U.S. 267 (1963), as analogous, wherein the Court found that a city's mayor and police, without any written ordinances determined "that the city would not permit Negroes to seek desegregated service in restaurants"; "Consequently, the city must be treated exactly as if it had an ordinance prohibiting such conduct." 2-ER-65.

### D. Plaintiffs Adequately Pled Violation Of Fourteenth Amendment Right to Equal Protection Against Clark (Including Failure to Intervene)

In dismissing the first cause of action for Violation of the Fourteenth Amendment, the District Court concluded that "the TAC does not identify comparators or allege other facts going to Clark's intent." 1-ER-5. The Court asserted that Plaintiffs did "not directly respond to this argument in their opposition." *Ibid.* The Court then concluded there was a failure "to adequately allege intent," stating: "The TAC alleges broadly that there are other store owners near plaintiffs' store who are not black and have worked at their stores at night and 'have not been subjected to the type of confrontation at issue here.'" 1-ER-5—6 (referring to TAC, ¶ 53, 2-ER-127). In dismissing the claim, the Court stated: "These allegations are vague and conclusory. They do not allege that law enforcement has been aware of the other store owners working at night such that they chose not to

intervene. Further, they do not indicate that Clark the defendant at issue, has treated other store owners differently or that he has even had an opportunity to do so." 1-ER-6.

The District Court's approach was inconsistent with standards for assessing the sufficiency of a cause of action.

In *Arizona Students Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016), the Court stated: "A plaintiff may establish motive using direct or circumstantial evidence." *Id.* at 870; citing *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citing *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002)).

Relative to intent, the TAC asserted facts that the confrontation occurred despite circumstantial evidence of the officers', including Clark's, awareness of the identities of Plaintiffs, circumstantial evidence that the confrontation for the purported reason of having Plaintiffs' identify themselves was just a pretext to further the intent to

intimidate Plaintiffs and interfere with their business activities.

The TAC includes: "Plaintiffs were and are each well-known to the respective town officials and individual officers, including OFFICER CLARK, by name and as the owners of YEMA-Tiburon." 2-ER-109. The TAC also alleges that Clark "had driven and walked past YEMA-Tiburon many times both as a police officer and/or as a private citizen" and that he "cannot credibly maintain he did not know Plaintiffs owned YEMA-Tiburon nor that he did not recognize them on the evening at issue, particularly due to their skin color." 2-ER-117.

Additionally, Plaintiffs set forth facts regarding discriminatory actions taken against them by Belvedere and Tiburon prior to the event at issue, stating: "both have been stopped by both agencies, detained, questioned, required to produce identification, had driver's licenses with photographs and vehicle registrations checked, and were interrogated without good cause." 2-ER-117. Further, the

TAC included: "CLARK had access to this information when requested to provide backup for Madfes and Blasi. When Madfes and Blasi persisted in pressing KHALIF for identification, CLARK knew both officers possessed this information already, CLARK had this information, and it was immediately accessible on their BPD and TPD data base. Yet CLARK stood by, failed to provide the identification being requested, did so deliberately, and in conscious disregard of Plaintiffs' Constitutional Rights, and did not intervene due to Plaintiffs' Race. He knew who they were. He would have volunteered this information to Madfes and Blasi had they been White." 2-ER-117—118.

Additionally, the TAC alleged that Officer Clark and the two Tiburon officers engaged in the confrontation with Plaintiffs "despite knowing their identities and ownership of YEMA-Tiburon," a confrontation that "profiled, targeted, falsely detained, arrested, searched, harassed, intimidated, and threatened Plaintiffs' safety, emotional health and well-being, and lives while they worked in YEMA-Tiburon late

the night of the incident. This was done intentionally, knowingly, recklessly, and with 'Deliberate Indifference' of the Constitutional Rights of Plaintiffs in failing to intervene and stop Blasi and Madfes from verbally harassing, intimidating, frightened, and unlawfully attempting to coax Plaintiffs outside their store so Blasi and Madfes could continue their unlawful actions and falsely detain and/or arrest them without legal basis or justification. These actions were intended, taken to, and did send them the message that they were not welcome in the Tiburon and BELVEDERE business and social communities simply because of the color of their skin. The implied message was that they should close YEMA-Tiburon and leave Tiburon." 2-ER-207—208.

Based on the officers' prior awareness of the identities and roles of Plaintiffs' as owners of The Store, Yema, where the confrontation took place, plaintiffs alleged, on information and belief, "that prior to initiation of the events which were about to unfold, CLARK, Madfes, and Blasi, met,

communicated, discussed, planned, and/or coordinated and conspired to take the actions described herein." 2-ER-237.

Indicating the actions of Tiburon and Belvedere officers as intentional discrimination, and disparate treatment of Plaintiffs because they are Black, Plaintiffs' set forth the facts that: "There was no emergency, urgency, danger, or any other legitimate concern of these police officers regarding the activities occurring inside YEMA-Tiburon before, during, nor following the confrontation. Part of the conspiracy included CLARK standing in the shadows away from YEMA-Tiburon entrance, place his hand on his service revolver, and began what Plaintiffs perceived as removing it from its holster. CLARK knew that in doing so, this action would cause great fright, anxiety, and fear to Plaintiffs for their lives, safety, and well-being. He did so because KHALIF and AWASH are of color and the only Black merchants in Tiburon or BELVEDERE." 2-ER-237—238.

Further, Plaintiffs stated: "This action is brought because Plaintiffs were treated differently because they were

Black and that they would not have suffered the different treatment if they had not been Black or had not been associated with a Black-owned business." *Ibid.*

Regarding the context of conspiracy involving Tiburon and Belvedere to subjugate because of race, the TAC included the contextual facts regarding Tiburon's involvement, stating: "Prior to this litigation, Plaintiffs resolved the issues presented here with the City of Tiburon, Officer Madfes, and Sgt. Blasi. By this action, Plaintiffs seek relief from the CITY OF BELVEDERE, BPD, and OFFICER CLARK for their role in the invidious discrimination against them." 2-ER-109.

The TAC stated that the action was brought against Belvedere, including Officer Clark, "based upon their role in a confrontation with Plaintiffs that was initiated by" Tiburon police officers, Officer Isaac Madfes and ("Officer Madfes") and Sergeant Michael Blasi (hereinafter "Sgt. Blasi"), and that Officer Clark "participated in that confrontation, supported it, conspired with Officer Madfes and Sgt. Blasi to

confront Plaintiffs to violate their Civil Rights, and failed to intervene to prevent or end it sooner." 2-ER-115.

Officer Clark "acted under color of law in his role in the confrontation as he wore the uniform of a police officer and demonstrated his readiness to use deadly-force, by placing his hand on his handgun, posturing his readiness to draw the handgun from its holster with his attention directed at Plaintiffs, and KHALIF in particular, with the effect to maintain subjugating, subordinating, demeaning control over KHALIF, AWASH … and treating them as members of an inferior caste." 2-ER-115.

Further, Plaintiffs asserted that such confrontations are "part of a systemic approach towards Blacks that are designed to deprive Blacks of equal protection of the laws, deprive them of due process relative to their substantive rights, and to obstruct or delay the opportunity of Blacks, including KHALIF and AWASH, from enjoying 'unalienable rights' of 'Life, Liberty and the Pursuit of Happiness' that were the foremost principles of the Declaration of

Independence." 2-ER-109. Further, Plaintiffs set forth: "Such confron[t]ations of Black persons are tools for 'denoting the inferiority' of Black persons as part of 'the Negro group,' tools that are meant to instill a 'sense of inferiority' and to undermine 'the motivation' of Black persons to enjoy the full benefits of American citizenship." *Ibid.*; quoting *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 494 (1954).

The District Court ultimately focused on the sufficiency credibility of Plaintiffs' allegations that they were treated differently than White store owners. Especially when the other allegations of the TAC are considered, the allegations are sufficient to put Defendants on notice of the nature of Plaintiffs' claims. Plaintiffs stated: "Business owners who are not Black have not been subjected to the type of confrontation suffered by KHALIF and AWASH. Other businesses are in the immediate area of YEMA-Tiburon and the owners and operators of those other businesses have not been subjected to the type of confrontation at issue here,

despite those owners and operators sometimes working in their stores during the darkness of night. Such other clothing stores in the immediate vicinity of YEMA-Tiburon, include four other clothing stores on the same street in Belvedere-Tiburon within blocks of YEMA-Tiburon." 2-ER-127.

The allegations of the TAC were sufficient to show that the police officers, including Clark, patrolled the area, knew Plaintiffs', yet confronted them in their store, something that no White shopkeeper has suffered.

While the facts alleged by Plaintiffs showed that Officer Clark affirmatively participated in a conspiracy to deprive Plaintiffs, directly or indirectly, "of the equal protection of the laws, or of equal privileges and immunities under the laws," by intimidating Plaintiffs on the basis of race in Plaintiffs' operations of their business, their employment (§ 1985(3)), the facts also demonstrate that Officer Clark failed to intervene by abiding by and promoting the conspiratorial plan to intimidate plaintiffs,

instead of even belatedly intervening against the intimidating actions led by Officer Madfes and Sgt. Blasi. 2-ER-125—127. Clark could have intervened in the confrontation by belatedly eschewing his conspiracy with the other officers and objecting to the confrontation.

The facts alleged by Plaintiffs at least inferred that Plaintiffs were treated differently than White shopkeepers and that the police in their patrols had the opportunity to engage White shopkeepers in the circumstances of a confrontation like that suffered by Plaintiffs and that the police never did so. Such inferences are generally to be drawn in plaintiffs' favor. *Naffe v. Frey*, 789 F.3d at 1036; citing, *inter alia*, *Iqbal*, 556 U.S. at 677-678.

The allegations of violation of the Fourteenth Amendment should have been assessed to have been sufficient.

### E. Plaintiffs Adequately Pled Violation of Fourth Amendment Right To Be Free From Unreasonable Detention Against Clark (Including Failure to Intervene)

The District Court's order observed Plaintiffs' allegations that "Officer Clark violated the Fourth Amendment by subjecting plaintiffs to prolonged detention by putting his hand on his gun, indicating that he would use the gun if plaintiffs did not comply with the officers" and that "Clark is directly liable for his own conduct, conspired with others, and failed to intervene." 1-ER-6. The Court addressed Defendants' contentions that "plaintiffs have not adequately alleged they were detained and have not alleged sufficient conduct by Clark to show that he directly detained plaintiffs, conspired with others to detain plaintiffs, or failed to intervene in the detention of plaintiffs." *Ibid.*

The Court concluded that Plaintiffs had "inexplicably fail to address them in their opposition" and that "[f]ailure to address an argument raised in a motion is generally

understood as a concession." 1-ER-7. The Court then "agree[d] with the defendants that Clark's role as alleged in the complaint is insufficient to support the claim." *Ibid.*

While Plaintiffs did not have a heading addressing this claim, Plaintiffs did oppose Defendants' assertions that Plaintiffs had failed to assert constitutional claims.

As mentioned at the start of this major heading, although Plaintiffs' opposition did not separate arguments as between the Fourteenth Amendment and Fourth Amendment, causes of action, the points and authorities addressed both the Fourteenth and Fourth Amendments. 2-ER-61—73. As to the Fourth Amendment, Plaintiffs' opposition to the motion to dismiss asserted Ninth Circuit authority, *Cohen v. Norris*, 300 F.2d 24, 26-27, for the points that police confrontations, without an arrest, but where officers "conducted the search and seizure in the presence of others ***in order to humiliate plaintiff***, and that he was humiliated," violated "[t]he guarantee against unreasonable searches and seizures contained in the Fourth Amendment

has been made applicable to the states by reason of the due process clause of the Fourteenth Amendment." 2-ER-71; quoting *Cohen v. Norris*, 300 F.2d 24, 26-27, supra; citing *Monroe v. Pape*, 365 U.S. 167, 171, supra. As asserted in Plaintiffs' opposition, *Cohen* further stated: "'In our view *Monroe v. Pape* announces the rule that an allegation of a purpose to discriminate or a purpose to deprive one of any federal right, is not essential to the statement of a claim under § 1983 predicated on an alleged violation of the due process clause of the Fourteenth Amendment.'" 2-ER-71; quoting *Cohen* at 29. "'The security of one's privacy against arbitrary intrusion by the police is "at the core of the Fourth Amendment."'" 2-ER-71—72; quoting *Cohen* at 31; quoting *Wolf v. People of State of Colorado*, 338 U.S. 25, 27 (1949).

The authorities asserted by Plaintiffs' opposition, therefore, supported their cause of action based on both on the Fourth Amendment. 2-ER-65—73.

Considering the confrontation that occurred, the facts alleged by Plaintiffs demonstrate the sufficiency of their

claim for violation of Fourth Amendment rights; while *Cohen* referred to the intent that plaintiff suffer degradation by "humiliation," Plaintiffs here sufficiently alleged degradation by other terms, including that Defendants "profiled, targeted, falsely detained, arrested, searched, harassed, intimidated, and threatened Plaintiffs' safety, emotional health and well-being, and lives while they worked in YEMA-Tiburon late the night of the incident. This was done intentionally, knowingly, recklessly, and with 'Deliberate Indifference' of the Constitutional Rights of Plaintiffs … These actions were intended, taken to, and did send them the message that they were not welcome in the Tiburon and BELVEDERE business and social communities simply because of the color of their skin. The implied message was that they should close YEMA-Tiburon and leave Tiburon." 2-ER-207—208.

The facts alleged indicated that the confrontation lasted fifteen minutes. 2-ER-87—88. Under the circumstances, that was an unreasonable detention and

intrusion into Plaintiffs' business premises of at least the

magnitude of the intrusion at issue in *Cohen, supra,* 300

F.2d 24, 26-31.

Again, Clark could have intervened in the

confrontation by belatedly eschewing his conspiracy with the

other officers and objecting to the confrontation.

These facts, and the facts described in the prior

subheading regarding the Fourteenth Amendment,

adequately support Plaintiffs' claim of violation of Fourth

Amendment rights.

## F.    Plaintiffs Adequately Pled Cause of Action Against Municipalities Based on *Monell*

Regarding the third claim is for *Monell* liability against

defendants Belvedere and BPD, the Court concluded:

"Plaintiffs have failed to adequately allege their Fourteenth

and Fourth Amendment claims. Accordingly, their Monell

claim is dismissed." 1-ER-7.

Further, the opposition referred again to *Adickes* as

authority supporting the sufficiency Plaintiffs' claims

pursuant to *Monell*, quoting: "'Congress included customs and usages within its definition of law in [§] 1983 because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South. … "(E)ven where the laws are just and equal on their face, yet, by a systematic maladministration of them, or a neglect or refusal to enforce their provisions, a portion of the people are denied equal protection under them." Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.'" 2-ER-73; quoting *Adickes* at 167-168.

Regarding allegations of custom and usage that support a *Monell* claim, Plaintiffs referred to *Adickes*, wherein the Court stated: "'It would be a narrow conception of jurisprudence to confine the notion of "laws" to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice … can establish what is state law. The equal protection clause

did not write an empty formalism into the Constitution.

Deeply embedded traditional ways of carrying out state

policy, such as those of which petitioner complains, are often

tougher and truer law than the dead words of the written

text.'" 2-ER-64—65; citing *Adickes* at 168; quoting *Nashville,*

*C. & St. L.R. Co. v. Browning*, 310 U.S. 362, 369 (1940).)

Regarding the third cause of action against the

government entities based on *Monell*, Belvedere recited:

"'[M]unicipalities may be liable under § 1983 for

constitutional injuries pursuant to (1) an official policy; (2) a

pervasive practice or custom; (3) a failure to train, supervise,

or discipline; or (4) a decision or act by a final policymaker.'"

2-ER-99; citing *Horton v. City of Santa Maria*, 915 F.3d 592,

602-603 (9th Cir. 2019).

Plaintiffs' have adequately alleged facts that show a

custom of police intimidation, indicative of lack of training

and supervision, of Plaintiffs based on their race, which

supports a *Monell* claim. *Johnson, supra*, 574 U.S. at 11;

*Leatherman, supra*, 507 U.S. at 164; *Herrera, supra*, 953 F.3d 1063, 1075, fn. 6; 2-ER-108—109,

*Lombard, supra,* 373 U.S. 267, indicates that *Monell* liability is supported by facts indicating that a city's mayor and police, without any written ordinances determined "that the city would not permit Negroes to seek desegregated service in restaurants," and, "[c]onsequently, the city must be treated exactly as if it had an ordinance prohibiting such conduct." 2-ER-65.

## IV.   PLAINTIFFS SHOULD HAVE BEEN GIVEN LEAVE TO AMEND

Under the circumstances here, as previously indicated, to the extent necessary, Plaintiffs should have been allowed to amend to substitute a citation to section 1985(3) in place of the references to 18 U.S.C. sections 241, 242, and 245.

Leave to amend should have been granted relative to the District Court's assessment that Plaintiffs had failed to "allege that law enforcement has been aware of the other

store owners working at night such that they chose not to intervene." 1-ER-6.

The facts alleged by Plaintiffs at least inferred that Plaintiffs were treated differently than White shopkeepers and that the police in their patrols had the opportunity to engage White shopkeepers in the circumstances of a confrontation like that suffered by Plaintiffs and that the police never did so. 1-ER-6, referring to TAC, ¶ 53, 2-ER-127.

Plaintiffs stated: "Business owners who are not Black have not been subjected to the type of confrontation suffered by KHALIF and AWASH. Other businesses are in the immediate area of YEMA-Tiburon and the owners and operators of those other businesses have not been subjected to the type of confrontation at issue here, despite those owners and operators sometimes working in their stores during the darkness of night. Such other clothing stores in the immediate vicinity of YEMA-Tiburon, include four other clothing stores on the same street in Belvedere-Tiburon within blocks of YEMA-Tiburon." 2-ER-127.

If that needs to be explicitly stated, Plaintiffs should be permitted leave to amend.

Leave to amend should be provided relative to such a perceived deficiency because the District Court's technical dissection exceeded the level of scrutiny directed by the relevant authorities. As previously pointed out, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, *supra*, emphasized that federal pleading rules (Fed. Rule Civ. Proc. 8(a)(2)) "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 11.

Such leave to amend would be consistent with *Arizona Students Association v. Arizona Board of Regents*, 824 F.3d 858 (9th Cir. 2016), stating: "When justice requires, a district court should "freely give leave" to amend a complaint." *Id.* at 871. "This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–1052 (9th Cir. 2003), "Dismissal of a complaint without leave to amend is only proper when, upon

de novo review, it is clear that the complaint could not be saved by any amendment." *Arizona Students* at 871.

It is clear that this complaint could be saved by amendment.

## CONCLUSION

The order dismissing Plaintiffs' complaint should be reversed and the case remanded for further proceedings.

Respectfully submitted,

DATED: January 11, 2024

Kelly, Trotter & Franzen

*/s/ David P. Pruett*

David P. Pruett
Attorneys for
Plaintiffs/Appellants
Yema Khalif and Hawi
Awash

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**


**9th Cir. Case Number(s) 23-15919**

I am the attorney or self-represented party.

**This brief contains 13,555   words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature /s/ David P. Pruett     Date January 11, 2024**

# ADDENDUM – STATEMENT OF PRIMARY AUTHORITIES

The primary authorities asserted are the Fourteenth and Fourth Amendments of the United States Constitution, and 42 U.S.C. sections 1983 and 1985(3), which are set forth verbatim, as follows:

## U.S. Const. amend. XIV

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice

President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or

comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

**U.S. Const. amend. IV:**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## **42 U.S.C.A. § 1983 – Civil action for deprivation of rights:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia

shall be considered to be a statute of the District of Columbia.

### **42 U.S.C.A. § 1985 (3) – Depriving persons of rights or privileges:**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or

property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

CERTIFICATE OF SERVICE

FOR CASE NUMBER 23-15919

I hereby certify that on January 11, 2024, I electronically
filed the foregoing with the Clerk of the Court for the United
States Court of Appeals for the Ninth Circuit by using the
appellate CM/ECF system.

**APPELLANTS' OPENING BRIEF**

Participants in the case who are registered CM/ECF users
will be served by the appellate CM/ECF system.

$\phantom{xxxxxx}$ _**/s/ Lorraine Orduno**_$\phantom{xxxxxxxx}$
Lorraine Orduno